IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:                        )
                              )
ROGER C. SCHAEFER and         )    Bankruptcy Case No. 08-30285
EVA K. SCHAEFER,              )
                              )
              Debtors.        )

ROGER C. SCHAEFER and         )
EVA K. SCHAEFER,              )
                              )
              Plaintiffs,     )
                              )
        vs.                   )    Adversary Case No. 08-3088
                              )
FIRST NATIONAL BANK OF        )
WATERLOO, et al.,             )

## OPINION

This matter having come before the Court on a Complaint to
Determine Priority of Liens filed by the Debtors and the Cross-Claim
filed by the Official Committee of Unsecured Creditors against
Defendant, First State Bank of Red Bud; the Court, having heard
arguments of counsel and having reviewed written memoranda filed
by the parties, makes the following findings of fact and conclusions
of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy
Procedure.

## Findings of Fact

The parties have agreed that the material facts in this matter
are not disputed and are, in pertinent part, as follows:

1.    On the 15th day of February 2008, Roger C. Schaefer and
Eva K. Schaefer filed their voluntary case under Chapter 11 of
the United States Bankruptcy Code.

2.    During the course of the Debtors' Chapter 11 case, the Office of the United States Trustee appointed the members of the Committee, and the Committee has standing to prosecute the claims described herein.

3.    As of the petition date, the Debtors were the owners of certain real property and improvements commonly known as 9442 Taake Road, Columbia, Illinois, 62236-3926.

4.    As of the petition date, the Debtors were indebted to the Bank by reason of, among other things, a certain promissory note dated September 21, 2007, in the original principal sum of $753,824.30.  As of the petition date, there was due and owing from the Debtors to the Bank, under the Note, the principal sum of $753,824.30, plus interest thereon through the petition date.

5.    As of September 21, 2007, the Debtors were in default of their obligations to the Bank.

6.    Under the Note, the Bank extended the maturity of the Debtors' obligations through and including September 21, 2008.

7.    On August 27, 2007, the Debtors made and delivered to the Bank a real estate mortgage against the property.

8.    By its terms, the Mortgage provides that it was "given to secure (A) payment of the Indebtedness and (B) performance of any and all obligations under the Note, the Related Documents, and [the] Mortgage."  The term "Indebtedness" includes all obligations of the Debtors to the Bank.  In addition, the Mortgage defines the term "Note" as a promissory note in the amount of $4

million; however, there is no promissory note in the amount of $4 million.

9.   The Bank did not advance funds or make additional loans to the Debtors on or about August 27, 2007.

10.   On May 16, 2008, the Debtors commenced this adversary proceeding to determine the validity and priority of liens against and security interests in the property.   The Bank and the Committee are Defendants in the Debtors' lien priority proceeding.

11.   The Committee filed a cross-claim against the Bank, seeking to avoid the Mortgage as a fraudulent transfer pursuant to 11 U.S.C. § 548.   Specifically, the Committee claims that the Bank did not provide the Debtors with reasonably equivalent value in exchange for the Mortgage.

12.   This Court entered its Order confirming the Debtors' Chapter 11 Plan of Reorganization on May 7, 2009.   The Plan provides that the Bank will be treated as either a secured or unsecured creditor, depending on the outcome of this adversary proceeding.

13.   At all relevant times, the Debtors/Plaintiffs were in the business of farming and pork production.

14.   The Debtors conducted business under the names of "Roger and Eva Schaefer" and "Schaefer Stock Farm."   Additionally, the Debtors were shareholders in Premium Pork, Inc., a corporation in the business of pork production.

15.   The Debtors personally guaranteed the debt of Premium Pork, Inc. to the Cross-Defendant Bank.

16.   The August 27, 2007, mortgage at issue in this matter was signed at the Debtors' house after being brought there for their signature by the Bank's representative, Kevin Fitzgerald.

17.   At the time the Debtors executed the $4 million mortgage, all of Debtors' assets were encumbered by prior debt.  Following the August 27, 2007, mortgage execution, Premium Pork, Inc. executed a promissory note in favor of the Cross-Defendant Bank in the amount of $3,563,080.09, and a second promissory note in the amount of $315,673.93, on September 21, 2007.

18.   Additionally, on September 21, 2007, the Debtors, doing business as Schaefer Stock Farm, executed a promissory note in favor of the Cross-Defendant Bank in the amount of $753,824.30.

19.   No litigation or liquidation was threatened by the Cross-Defendant Bank during the relevant period of time, and there is no indication that the execution of the mortgage on August 27, 2007, caused the Cross-Defendant Bank to either agree or not agree to extend its notes with the Debtors/Plaintiffs.

<u>Conclusions of Law</u>

Pursuant to 11 U.S.C. § 548(a)(1)(B):

(a)(1)  The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .

(B)  (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

The following elements must be shown in order to establish a fraudulent conveyance under § 548(a)(1)(B): (1) a transfer of the debtors' property or interest therein; (2) made within two years of the filing of the bankruptcy petition; (3) for which the debtors received less than a reasonably equivalent value in exchange for the transfer; and (4) either (a) the debtors were insolvent when the transfer was made or were rendered insolvent thereby; or (b) the debtors were engaged or about to become engaged in business or a transaction for which their remaining property represented an unreasonably small capital; or (c) the debtors intended to incur debts beyond their ability to repay them as they matured. In re FBN Food Services, Inc., 82 F.3d 1387 (7th Cir. 1996). The Cross-Claimant Committee has the burden of proof on all elements under § 548(a)(1)(B), including, without limitation,

the absence of reasonably equivalent value.   <u>Barber v. Golden Seed Co.</u>, 129 F.3d 382 (7th Cir. 1997).

Value is defined under 11 U.S.C. § 548(d)(2)(A) as:

(d)(2)   In this section -

> (A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

Value has also been defined as that which provides an economic benefit, either direct or indirect, to the debtor.   <u>In re Wilkinson</u>, 319 B.R. 134 (Bankr. E.D. Ky. 2004); <u>In re Empire Interiors, Inc.</u>, 248 B.R. 305 (Bankr. N.D. Ohio 2000).   There must be an economic benefit to the debtor to protect the debtor's unsecured creditors by preserving the value of the debtor's estate.   <u>See</u>: <u>Empire Interiors</u>, <u>supra</u>, at 308.

Once value is defined, the Court must measure the value of what the Debtors' received against the value of what was transferred.   <u>In re Vitreous Steel Products Co.</u>, 911 F.2d 1223 (7th Cir. 1990).   The issue of equivalent value should be measured as of the time of the transfer in question.   <u>McCook Metals, LLC</u>, 319 B.R. 570 (Bankr. N.D. Ill. 2005).   The Seventh Circuit has emphasized that that requires a fact-specific case by case analysis to determine whether equivalent value has been received in a given case.   <u>Anand v. Nat'l. Republic Bank of Chicago</u>, 239 B.R. 511 (D.C. N.D. Ill. 1999).

Under the facts of the instant case, this Court must find that there was no reasonably equivalent value given by the

Cross-Defendant Bank to the Debtors/Plaintiffs in exchange for their execution of the mortgage of August 27, 2007.  It has been stipulated that no money changed hands and that no additional funds were loaned to the Debtors/Plaintiffs personally.  The Debtors' personal liability to the Cross-Defendant Bank did not change as a result of the August 27, 2007, mortgage.  This Court agrees with the logic advanced in the case of In re Solomon, 299 B.R. 626 (BAP 10th Cir. 2003), in which that Court found that a bank's forbearance did not constitute reasonably equivalent value because no new funds were advanced in connection with the mortgage transaction and there was no change in the debtor's total liability to the bank.  In this case, the Debtors/Plaintiffs guaranteed the Cross-Defendant Bank's loans to Premier Pork, Inc.  The $4 million mortgage executed by the Debtors/Plaintiffs on August 27, 2007, was clearly to secure a note from Premier Pork, Inc. to the Cross-Defendant Bank.  Though that note was never executed, Premier Pork, Inc. did execute two notes:  one in the sum of $3,563,080.09, and one in the sum of $315,673.93.  Debtors/Plaintiffs never received any proceeds from these loans personally, and there has been nothing shown that any other quantifiable benefit was received by the Debtors/Plaintiffs as a result of the August 27, 2007, mortgage transfer.

Having found that there was no reasonably equivalent value in this matter, this Court finds that the August 27, 2007, mortgage was constructively fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B), and that the lien created by that mortgage should be avoided.

ENTERED:  October ___15___, 2009.

                              /s/Gerald D. Fines
                              GERALD D. FINES
                              United States Bankruptcy Judge